UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**FRANK ANNUNZIATA**,                                    Chapter 7
    Debtor                                           Case No. 06-14799-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**THE INVESTORS GROUP, INC.,**
    Plaintiff
v.                                                       Adv. P. No. 07-1050
**FRANK ANNUNZIATA,**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court for determination is the complaint filed by the plaintiff, The Investors Group, Inc. ("Investors"), against the debtor, Frank Annunziata ("Annunziata" or the "Debtor"). Investors seeks denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(A) on the ground that the Debtor concealed his ownership interest in real estate located at 2 Rose Lane, Stoneham, Massachusetts (the "Stoneham real estate" or the "Property"). It also seeks a determination that it holds a valid lien against the Debtor's interest in the Stoneham real estate by virtue of a special attachment authorized by the Middlesex Superior Court, Department of the Trial Court. The Debtor filed an answer denying Investors's allegations and asserting a number of affirmative defenses.

1

Additionally, he asserted four counterclaims as follows: "Malicious Prosecution/Frivolous Complaint;" "Intentional/Reckless/Infliction of Emotional Distress;" "Violation of Federal and State Fair Debt Collection Practices Act [sic];" and "Violation of Mass. General Laws 93(A) [sic]."

The parties submitted a Joint Pretrial Memorandum on September 6, 2007, and the Court conducted a trial on January 28, 2008. Two witnesses testified and 16 exhibits were introduced into evidence. Upon consideration of the documentary evidence and testimony, the Court now makes the following findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

## II. FINDINGS OF FACT

The plaintiff's predecessor, First National Bank of Boston, obtained a judgment against the Debtor on September 19, 1994 in the sum of $12,447.42 from the Dedham District Court.[1] It subsequently obtained an execution in the sum of $12,502.28. Neither First National Bank of Boston nor Investors recorded the execution with the Middlesex Registry of Deeds.

In 1997, the Debtor's non-debtor spouse, Deborah Annunziata, acquired the Stoneham real estate as sole owner. The Debtor testified that his wife insisted on holding title to the Stoneham real estate in her name because six years earlier property which the couple had owned jointly in East Boston, Massachusetts was sold at foreclosure. According

---

[1] Although the assignment to the plaintiff is undisputed, the Court has no evidence as to when the assignment was obtained by Investors.

2

to the Debtor, his spouse would not allow his name to appear on the deed, and he agreed to her demand because her family provided the down payment for the Stoneham real estate. The Debtor has lived in the Property with his wife and three children since its purchase, although periodically he and his wife separate. The Debtor testified that during those periods he has lived with his parents. The Debtor and his spouse are currently separated.

In 1997, at the time Deborah Annunziata acquired the Stoneham real estate, the Debtor was employed as a truck driver, although he was unemployed for an unspecified period during that year as well. During the same time period, the Debtor's wife was self-employed as a freelance makeup artist.

Since the time Deborah Annunziata acquired the Stoneham real estate, it has been encumbered by several mortgages, including a mortgage granted to Option One Mortgage Corp. ("Option One"). According to the Debtor, he, his wife and his wife's family have made the mortgage payments, although the Debtor submitted no evidence as to the amounts of money paid by each toward the mortgage debt on the Stoneham real estate. The Debtor submitted a copy of a cashier's check payable to Option One, as mortgagee, in the sum of $9,910.79, dated March 20, 2007, which the couple used to cure a mortgage arrearage. The Debtor testified that he obtained the check using the couple's tax refund, their own funds, and funds from his wife's father.

The Debtor did not execute the purchase money mortgage obtained by his wife to fund the purchase of the Stoneham real estate and was not obligated on the underlying

3

note. After acquiring the property, Deborah Annunziata obtained other mortgages on the property and engaged in refinancing transactions. In 2003, Ocwen Financial Corp., the mortgagee at the time, was owed approximately $250,000. In late 2003, the couple decided to refinance the Property in an attempt to save money. The Debtor engaged Boston Mortgage Group as a mortgage broker and prepared a loan application. The Debtor signed the application as the borrower; his wife was not listed as a co-borrower. On the loan application, the Debtor represented that he had an ownership interest in Property. Specifically, he represented that he intended to occupy the Property as his principal residence, that he had had an ownership interest in the Property as his principal residence within the last three years, and that he held title to the Property with his spouse.

The loan application was approved in the sum of $258,000. On December 15, 2003, the Debtor and his spouse attended a closing at the law firm of Cushing & Dolan, P.C. Although the Debtor attended the closing and executed an Adjustable Rate Note in the principal sum of $258,000 and a Mortgage in favor of Option One, he testified that he had no recollection of the state of the title. Both Deborah Annunziata and the Debtor executed the Mortgage and their initials appear on that document. The signature page of the Adjustable Rate Note that accompanied the Mortgage was not attached to the note which was introduced into evidence, and only the Debtor's initials appear on the note. Similarly, Deborah Annunziata did not sign the HUD-1 Settlement Statement, and only the Debtor's initials appear on that document.

At the December 15th closing, Deborah Annunziata executed a quitclaim deed

pursuant to which she conveyed the Stoneham real estate to herself and the Debtor as tenants by the entirety. The stated consideration in the deed was $1.00. The deed was never recorded, but a deed preparation fee and a recording fee appear on the Settlement Statement.

In 2006, Investors pursued collection of its judgment in a supplementary process proceeding at which it was represented at several court hearings by Attorney Ronald Shufrin ("Attorney Shufrin"). Attorney Shufrin interviewed the Debtor in May and November of 2006 about his assets, liabilities, income and expenses, using a pre-printed form, which required answers to questions about gross income and take home pay, marital status, number and age of children, monthly mortgage payments, make and model of cars and car payments, bank accounts, savings, and major indebtedness. On the first form he completed with Attorney Shufrin on May 19, 2006, the Debtor represented that he worked part time, earned $200 per week, lived with his parents, and was married. Additionally, he represented that his wife had no income, that he did not own a house, that he had no present mortgage balance, made no monthly mortgage payment, had no savings or retirement accounts, and had other liabilities in unspecified amounts.

The supplementary process hearing was continued, and in a form dated November 17, 2006, the Debtor made the same representations as on the prior form, except that he stated his income was $300 per week. Attorney Shufrin concluded that the Debtor had no ability to pay the judgment held by Investors and the matter was continued to May of 2007.

Although the Debtor testified that he has never made enough money to fully pay

5

his family's expenses, he was provided W-2 wage statements from separate employers for 2006, which reflect wages of $27,437.28 from Marjam Supply Co. and $45,652.75 from Choice Labor Inc. Additionally, the Debtor and his wife filed a joint federal income tax return for 2006 in which they reported that their respective occupations were "truck driver" and "student." They listed their "wages, salaries, tips, etc." as $76,696 and their combined adjusted gross income as $74,631. Additionally, the Debtor and his wife itemized deductions which totaled $35,254. The couple received a tax refund of $10,400 for the 2006 tax year.

In July of 2006, Investors filed a complaint in Middlesex Superior Court against the Debtor and Deborah Annunziata seeking a determination that the Stoneham real estate was jointly owned by the Debtor and his wife and that it was entitled to reach and apply the Debtor's interest in the Stoneham real estate in satisfaction of its execution. In that action, Investors sought a real estate attachment of all of the right, title and interest, whether legal or equitable, of the Debtor in the Stoneham real estate to the extent of $32,000. On August 15, 2006, at a hearing at which the Debtor was present, the Middlesex Superior Court granted the special attachment in the amount of $32,000. On the same day, Deborah Annunziata, recorded a Declaration of Homestead pursuant to Mass. Gen. Laws. ch. 188, § 1 with respect to the Property.

On December 13, 2006, the Middlesex Superior Court entered a default judgment against both the Debtor and his spouse. Based upon its findings that neither had filed an answer or otherwise defended and that the Stoneham real estate was in fact the property

6

of both the Debtor and Deborah Annunziata, the court ordered them to record the deed pursuant to which Deborah Annunziata conveyed the Property to herself and the Debtor as tenants by the entirety. In its order, the court further ruled that, if the parties failed to record the deed, "the recording of the judgment entered herein shall vest title in Deborah M. Annunziata and Frank Annunziata as husband and wife and tenants by the entirety" and that Investors would be entitled to reach and apply the Debtor's interest.

Three days after the Middlesex Superior Court entered its order, the Debtor filed a voluntary Chapter 7 petition. On Schedule A - Real Property, he listed an interest in the Stoneham real estate. He described his interest as "unknown," indicated that real estate was "in Wife's Name," stated that the current value of his interest without deducting any secured claim or exemption was $450,000, and that the amount of the outstanding secured claim was $249,619.00. On Schedule C - Exemptions, the Debtor claimed the Stoneham real estate as exempt pursuant to Mass. Gen. Laws ch., 188, § 1 to the extent of $100,000. No objections were filed to the Debtor's claim of exemptions, and the Chapter 7 trustee filed a report of no distribution on January 18, 2007. On July 19, 2007, the Debtor executed a reaffirmation agreement in which he agreed to pay in full the mortgage obligation to Option One Mortgage in the sum of $249,295.81.

### III.  ARGUMENTS OF THE PARTIES

Investors seeks an order denying the Debtor a discharge in bankruptcy on the ground that he concealed his interest in the Stoneham property within a year prior to his bankruptcy filing - - conduct which serves as a ground for denial of a debtor's discharge

7

under 11 U.S.C. § 727(a)(2)(A). Investors points to the deed by which Deborah Annunziata conveyed an interest in the Property to herself and the Debtor as tenants by the entirety, the Mortgage the Debtor granted to Option One, the HUD-1 Settlement Statement listing the Debtor as borrower, and the Debtor's execution of a mortgage loan application. Furthermore, Investors seeks a determination that it has a valid lien on the Stoneham real estate by virtue of the special attachment granted to it by the Middlesex Superior Court and that court's judgment ordering recordation of a deed reflecting a tenancy by the entirety form of ownership.

The Debtor maintains that he has no legal or equitable interest in the Stoneham property, that it is has always been owned solely by his spouse, that the deed in which his wife conveyed an interest to him was not recorded and is not valid, and that he did not conceal any interest in the Property in his bankruptcy case. The Debtor also seeks damages from Investors for abuse of process and intentional infliction of emotional distress, as well as for violation of unspecified state and federal laws governing debt collection practices.

## IV. CONCLUSIONS OF LAW

### A. Investors's Objection to Discharge

Investors relies upon 11 U.S.C. § 727(a)(2)(A) to support its objection to the Debtor's discharge. That section provides in pertinent part:

(a) The court shall grant the debtor a discharge, unless – . . .

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of

> property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed —
>
> > (A) Property of the debtor, within one year before the date of the filing of the petition;

11 U.S.C. § 727(a)(2)(A). In <u>Marrama v. Citizens Bank of Massachusetts (In re Marrama)</u>, 445 F.3d 518, 522 (1st Cir. 2006), the United States Court of Appeals for the First Circuit set forth the four elements that a plaintiff must establish by a preponderance of the evidence to sustain its burden under section 727(a)(2)(A). It stated:

> We have recognized that four elements are required to deny a discharge pursuant to § 727(a)(2)(A): (1) transfer or concealment of property (2) that belonged to the debtor (3) less than a year before the bankruptcy petition (4) with actual intent to hinder, delay, or defraud a creditor. *See* <u>In re Schifano</u>, 378 F.3d 60, 66-67 (1st Cir. 2004). Because a debtor rarely gives direct evidence of fraudulent intent, we have recognized that, even on summary judgment, intent to defraud a creditor can be proved by circumstantial evidence. *See* <u>In re Varrasso</u>, 37 F.3d 760, 764 (1st Cir. 1994). In weighing evidence of fraudulent intent courts should look to the following "objective indicia":
>
> > (1) insider relationships between the parties; (2) the retention of possession, benefit or use of the property in question; (3) the lack or inadequacy of consideration for the transfer; (4) the financial condition of the [debtor] both before and after the transaction at issue; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of the debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the events and transactions under inquiry; and (7) an attempt by the debtor to keep the transfer a secret.

<u>Marrama</u>, 445 F.3d at 522 (quoting <u>Groman v. Watman (In re Watman)</u>, 301 F.3d 3, 8 (1st Cir.2002) (internal citations omitted)). *See also* L. King, A. Resnick & H. Sommer, 6 *Collier*

*on Bankruptcy*, ¶ 727.02[2][a] at 727-13 (15th ed. Supp. 2007)(hereinafter "Collier"). "If the objectionable act occurred more than a year before bankruptcy, it may still provide a basis for objection to discharge if it operates as a continuing concealment." Collier, ¶ 727.02[b], at 727-14. According to the court in Small v. Bottone (In re Bottone), 209 B.R. 257 (Bankr. D. Mass. 1997),

> "Concealment" is "[a] withholding of something which one knows and which one, in duty, is bound to reveal. . . ." BLACK'S LAW DICTIONARY 289 (6th ed.1990). . . .Under the "doctrine of continuous concealment," a debtor may be denied a discharge, notwithstanding the time of the debtor's transfer or original concealment of his or her interest in property, if it is established that the debtor continued to conceal that interest from creditors during the year prior to the petition filing. "The doctrine does not negate the 'act' requirement of § 727 but merely recognizes that a failure to reveal property previously concealed can, in some circumstances, properly be considered culpable conduct during the year before bankruptcy warranting a denial of discharge."

209 B.R. at 262 (citations omitted, footnote omitted); *see also* In re McIsaac, 19 B.R. 391, 396 (Bankr. D. Mass. 1982)(concealment can be defined as "hiding or withdrawing property from observation, preventing the discovery of property or withholding knowledge of the existence, ownership or location of property."). In Bottone, the court noted that the doctrine of continuing concealment is "well recognized" in the Massachusetts. *See* Shamban v. O'Brien (In re O'Brien), 190 B.R. 1, 4 (Bankr. D. Mass.1995); Pelham Plate Glass, Inc. v. Charette (In re Charette), 148 B.R. 94, 96 (Bankr. D. Mass.1992); Nelson v. Peters (In re Peters), 106 B.R. 1, 4-5 (Bankr. D. Mass.1989); Cahillane v. MacDonald (In re MacDonald), 101 B.R. 836, 844 (Bankr. D. Mass.1989), *aff'd in part, rev'd in part*, 114 B.R. 326, 334-35 (D. Mass. 1990). Thus, concealment of a property interest may be grounds for denial

10

of a debtor's discharge, such as where a debtor has transferred property, but continues to use it as collateral, live there, make mortgage and other expense payments, and list it as an asset on a financial statement. *See* Friedell v. Kauffman (In re Kauffman), 675 F.2d 127, 128 (7th Cir. 1981). In addition, a debtor's concealment of an interest in property titled in another's name may provide a basis for denial of a debtor's discharge. *See* Keeney v. Smith (In re Keeney), 227 F.3d 679, 683-84 (6th Cir. 2000)("A beneficial interest of ownership in the property can be inferred . . . from . . .[the debtor's] . . . payment for and use of the properties, including his rent-free residence on each and payment of all mortgage obligations."). *See also* Rhode Island Depositors Economic Protection Corp. v. Hayes (In re Hayes), 229 B.R. 253 (B.A.P. 1st Cir. 1999).

In In re Hayes, the United States Bankruptcy Appellate Panel for the First Circuit ruled that the debtors' fraudulent retention of a beneficial interest in property which they had transferred to a family trust approximately five years prior to their bankruptcy warranted denial of their discharge in bankruptcy under 11 U.S.C. § 727(a)(2)(A) under a theory of continuous concealment. 229 B.R. at 262. The court framed the issue as whether the debtors committed an act of fraudulent concealment of property within a year of bankruptcy by keeping assets beyond the reach of creditors. Id. at 259. Answering the question in the affirmative, the court emphasized the debtors' deceptive, unflinching and unrepentant masking of a secret beneficial property interest after conveying legal title to the trust for no consideration while retaining the indicia of ownership within a year before bankruptcy. Id. at 261. It was immaterial to the court that the creditor had actual

knowledge of the debtors' secret interest or that the transfer had been accomplished five years before bankruptcy.  Id.  Because the debtors' secret retention of a beneficial interest in real estate was a sham and was part of their scheme to conceal their property from creditors, they were not entitled to a discharge in bankruptcy for fraudulent concealment of their property within the meaning of section 727(a)(2)(A). Id. at 262.

Based upon the weight of the evidence in the present case and the well-developed body of case law on the issue in this circuit, the Court finds that, like the debtors in Hayes, the Debtor in this case retained a secret interest in the Stoneham real estate within a year before the filing of his bankruptcy petition.  Moreover, the Court finds that the indicia of fraudulent intent referenced by the First Circuit in Marrama, 445F.3d at 522, are present in this case.

The creditor, who was Investors's predecessor-in-interest, obtained its judgment against the Debtor in 1994.  Although the Debtor's wife may have initially purchased the Stoneham real estate in 1997 with funds borrowed from her relatives, the Debtor testified that the Property was acquired in her name because of the couple's prior financial problems, in particular the foreclosure sale of their former residence in East Boston, Massachusetts.  The Debtor assented to his wife's insistence that title to the Stoneham real estate be in her name because of his poor credit history.

The Debtor has lived at the Stoneham real estate since 1997, except during intermittent periods of marital strife when he lives with his parents.  In 2003, the Debtor engaged a broker and prepared a mortgage loan application as the sole borrower.  He

represented on the loan application that he and his wife owned the property jointly. The Debtor borrowed funds based upon the representation that he was an owner of the Stoneham real estate. The Debtor presumably executed the Adjustable Rate Note to Option One as his initials appear on the document, and he executed the HUD-1 Settlement Statement in connection with the refinancing of the Property as the owner. The Debtor's wife, on the day of the closing, conveyed a legal interest in the Stoneham real estate to herself and the Debtor as tenants by the entirety, and the Settlement Statement reflects a deed preparation fee and a filing fee for the deed creating the tenancy by entirety.

Although the deed was not recorded, it is a valid transfer between the parties. *See* Mass. Gen. Laws. ch. 183, § 4.[2] The Debtor conceded that he made mortgage payments to Option One since the 2003 refinancing, including payments in 2006. In March of 2007, he obtained a treasurer's check for $9,019.79 to cure a mortgage arrearage. The source of these funds was the couple's tax refund and some funds that came from his wife's family, although the Debtor did not state how much was attributable to his wife's family. The

---

[2] Section 4 provides in relevant part the following:

> A conveyance of an estate in fee simple, fee tail or for life, or a lease for more than seven years from the making thereof, or an assignment of rents or profits from an estate or lease, shall not be valid as against any person, except the grantor or lessor, his heirs and devisees and persons having actual notice of it, unless it, or an office copy as provided in section thirteen of chapter thirty-six, or, with respect to such a lease or an assignment of rents or profits, a notice of lease or a notice of assignment of rents or profits, as hereinafter defined, is recorded in the registry of deeds for the county or district in which the land to which it relates lies. . . .

Mass. Gen. Laws ch. 183, § 4.

13

Debtor's wife did not work, and was a student, in 2006. Her family assisted in making the mortgage payments in 2006, although the Debtor was unable to quantify the extent to which his wife's family contributed to the monthly mortgage obligations. Significantly, he agreed to reaffirm the mortgage obligation to Option One in his bankruptcy case.

The Debtor's denial of any interest in the Property was incredible. The Debtor made a number of misrepresentations to Investors's attorney in connection with the supplementary process proceeding, including false representations as to his income and expenses. Moreover, on the worksheets which the Debtor assisted Attorney Shufrin in completing in May and November of 2006, he misrepresented his mortgage obligations by stating that his present mortgage balance was "0" and that he had no monthly mortgage payment. Nonetheless, in his bankruptcy case, he reaffirmed the obligation to Option One in the sum of $249,295.81

Based upon the preponderance of the evidence, the Court rules that the Debtor's fraudulent and continuing concealment of his equitable and legal interest in the Stoneham real estate during the year preceding his bankruptcy filing mandates that his discharge be denied under 11 U.S.C. § 727(a)(2)(A). As noted above, the indicia of fraudulent intent, namely the involvement of his spouse, his retention of possession and the use of the Property, the lack of consideration reflected in the unrecorded deed, and the Debtor's misrepresentations as to his interest in the property to Attorney Shufrin and Investors in May and November of 2006, compel a finding of a continuing concealment warranting denial of discharge.

B.  Investors's  Secured Status

In Count II of its Complaint, Investors seeks a determination that it has a valid lien on the Stoneham real estate by virtue of the special attachment granted by the Middlesex Superior Court of the right, title and interest of the Debtor in the property standing in the name of his wife.  The Debtor contests Investors's status as a secured creditor on the ground that he never gave it a security interest and he had no interest in the Stoneham property it could attach.

The Bankruptcy Code defines the term "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). The term "judicial lien" is defined as a "lien obtained by judgment, levy, sequestration or other legal or equitable process or proceeding." 11 U.S.C. § 101(36).  Under Massachusetts law, an attachment, including a special attachment against an interest in real estate, creates a valid lien against the real estate. Marcus v. Pearce Woolen Mills, Inc., 353 Mass. 483 (1968)(an attachment constitutes a lien, a real interest in the land"). *See generally* Cohen v. Wasserman, 238 F.2d 683 (1st Cir. 1956).

In a Chapter 7 case, a valid lien passes through bankruptcy unaffected unless specifically avoided by an order of the bankruptcy court under a theory recognized by the Bankruptcy Code. *See* Dewsnup v. Timm, 502 U.S. 410, 418 (1992).  The Debtor has not sought avoidance of the lien under any theory other than that he has no interest in the Property.  Based upon these principles and the special attachment granted by the Middlesex Superior Court, the Court finds that Investors has demonstrated that it has a

15

valid lien on the Debtor's interest in the Stoneham real estate.

    C. The Debtor's Counterclaims

Because the Court has found that both Counts of Investors's complaint are meritorious, the Court finds that the Counterclaims advanced by the Debtor present no genuine issue of material fact, lack merit, and must be dismissed. Accordingly, Investors, the Plaintiff-Defendant in Counterclaim, is entitled to judgment as a matter of law. *See* Fed. R. Bankr. P. 7056.

**V. CONCLUSION**

For the reasons discussed above, the Court shall enter a judgment in favor of Investors and against the Debtor.

                                    By the Court,

                                    Joan N. Feeney
                                    United States Bankruptcy Judge

Dated: February 12, 2008
cc: David LiBassi, Esq., Charles S. Kelly, Esq.